

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:13CR116

DARRELL LAMONT HARRIS

**MEMORANDUM OPINION**

Darrell Lamont Harris, a federal inmate proceeding <u>pro se</u>, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 77).[1] In his § 2255 Motion,[2] Harris raises the following claims for relief:

Claim One:      Counsel provided ineffective assistance[3] by:
(a) "failing to file any pretrial motions" or "pretrial discovery," "failing to conduct any pretrial investigations," and "not properly prepar[ing]," resulting in unacceptable strategic decisions (<u>Id.</u> at 4, 13-14);

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to Harris's submissions. The Court corrects the spelling, punctuation, capitalization, and emphasis in the quotations from Harris's submissions.

[2] Harris's § 2255 Motion includes a document titled, "Brief in Support of Petition for Writ of Habeas Corpus," and it is not separately paginated. (§ 2255 Mot. 13-22.) For ease of reference, the Court refers to Harris's "Brief in Support of Petition for Writ of Habeas Corpus" as part of the § 2255 Motion.

[3] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

(b) "refus[ing] to file a pretrial motion to dismiss federal indictment on grounds that the government violated [Harris's] Fifth Amendment Due Process Rights against pre-indictment delay"[4] (id. at 4);

(c) "refusing to file pretrial suppression motion to suppress the in-court [and] out-[of-]court identification of the prosecutor[']s two key witnesses" (id. at 15);

(d) "refus[ing] to file pretrial motion to dismiss federal indictment on grounds that prior dismissal of all [state] charges against [Harris] for the April 28, 2012 offense . . . should have constitutionally barred the federal government from later bringing charges against [Harris] for the same April 28, 2012 offense." (Id. at 16.)

Claim Two: "[Harris] was denied a fair trial for the following reasons with regard to prosecutorial misconduct[:]"

(a) "Fifth Amendment Double Jeopardy violation, (vindictive prosecution) (selective prosecution)"[5] (id. at 5);

(b) "Intentional distortion of evidence/ Brady[6] violation in that the prosecution withheld exculpatory evidence." (Id.)

Claim Three: "The evidence adduced in the trial of this case was insufficient as a matter of fact and law to sustain the resulting conviction." (Id. at 7.)

---

[4] "No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. V.

[5] "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V.

[6] Brady v. Maryland, 373 U.S. 83 (1963).

Claim Four:    "Appellate counsel rendered ineffective assistance [by] failing to present on appeal evidence to support [Harris's] claim that the subsequent federal indictment against him should have been constitutionally barred from re-prosecution due to the prior dismissal of all [state] charges." (<u>Id.</u> at 8.)

Claim Five:    "The trial of this case [wa]s representative of a sham prosecution." (<u>Id.</u> at 9.)

The Government has responded, asserting that Harris's claims lack merit. (ECF No. 88.) Harris has replied. (ECF No. 94.) For the reasons set forth below, Harris's § 2255 Motion (ECF No. 77) will be denied.

## I.    THE APPLICABLE STANDARD FOR SECTION 2255

The Government seeks dismissal of the § 2255 Motion on the ground that Harris fails to state a claim upon which relief can be granted. (ECF No. 88, at 23.) It is important to clarify initially that Fed. R. of Civ. P. 12(b)(6) is not the appropriate procedural vehicle to use in assessing standard of a motion to vacate under § 2255. In <u>Raines v. United States</u>, 423 F.2d 526 (4th Cir. 1970), the United States Court of Appeals for the Fourth Circuit listed three means of properly disposing of § 2255 motions: (1) summary dispositions; (2) dispositions on expanded records; and (3) evidentiary hearings. <u>Id.</u> at 529-30. Section 2255 permits the Court to summarily dismiss a claim if "the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). Nevertheless, "[a]llegations of 'a vague, conclusory or palpably incredible nature' do not raise factual issues which require a full hearing." Raines, 423 F.2d at 531 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). Moreover, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). In this instance, summary dismissal is appropriate. It is upon this standard that the Court reviews Harris's claims.

## II. FACTUAL AND PROCEDURAL HISTORY

Harris was charged, in the Circuit Court for the City of Colonial Heights, Virginia, with robbery and related felony charges in the City of Colonial Heights, Virginia. The preliminary hearing for these charges was held on August 8, 2012. The trial was set to begin on January 28, 2013, but the charges were ultimately nolle prossed. (Gov't's Resp. 9.)

The charges were later reinstated. Harris's counsel then filed several motions, including a motion to suppress the in-court and out-of-court eyewitness identifications of Harris. At

the suppression hearing, one of the Commonwealth's witnesses, Jennifer Hurley, was shown a photo lineup by Harris's counsel, which was later determined to be a photo lineup that did not include Harris's photograph.[7] Before it was determined that Ms. Hurley was shown a photo lineup that did not include Harris, Ms. Hurley identified Harris as "number two" on the photo lineup. In response, to Ms. Hurley's identification, Harris's counsel stated, "And I would note for the record, Judge, that is correct." A subsequent witness for the Commonwealth was shown the same photo lineup, and this witness indicated that the photo lineup was not the same photo lineup that the police officers had previously shown the witness. (May 20, 2013 Tr. 27.) The court denied the defense's suppression motion. (May 20, 2013 Tr. 57-58.) Ultimately, the charges were dismissed before trial by the Circuit Court for the City of Colonial Heights on speedy trial grounds.

On July 9, 2013, a federal grand jury, in a one-count Indictment, charged Harris with interference with commerce by robbery. On December 30, 2013, Harris's counsel filed a Motion in Limine, seeking to exclude the following testimony and evidence:

---

[7] The state court suppression hearing is briefly summarized because some of the claims in Harris's § 2255 Motion are based on the events at this hearing.

> (1) any testimony by law enforcement or any other
> government witness alleging that Mr. Harris was a
> suspect or in any way involved in any other robberies
> in Colonial Heights or in [any] other jurisdiction,
> and (2) evidence of a toy gun found in an apartment
> where Mr. Harris lived at the time of the robbery.

(Mot. in Limine 1, ECF No. 22.) After hearing argument, the Court denied the motion as to the toy gun, which was "described as a BB gun in the pleadings," and denied as moot the motion as to any reference to other robberies because "the United States does not intend to introduce any evidence of other crimes, including robberies." (Order 1, ECF No. 29.)

On January 6, 2014, the jury trial commenced. On January 8, 2014, after the close of all evidence in the case, Harris moved for a judgment of acquittal pursuant to Fed. R. of Crim. P. 29. The Court denied the motion. Following deliberations, which began on January 8, 2014 and ended on January 9, 2014, the jury returned its verdict. (ECF Nos. 39, 41.) The jury found Harris guilty of one count of interference with commerce by robbery, as charged in the one-count Indictment. (ECF No. 42.)

On April 8, 2014, the Court entered judgment against Harris and sentenced him to 240 months of imprisonment. Harris appealed. (ECF No. 57.) On appeal, Harris argued that the Court "erred in denying his motion for a judgment of acquittal under Fed. R. Crim. P. 29, because the Government presented insufficient evidence to sustain his conviction." United States

v. Harris, 593 F. App'x 189, 190 (4th Cir. 2014). The United States Court of Appeals for the Fourth Circuit found no error and affirmed Harris's conviction. Id. at 191.

### III. SUMMARY OF EVIDENCE

The Fourth Circuit summarized the evidence of Harris's guilt as follows:

> Harris concedes that the Government presented sufficient evidence that a robbery occurred and that the perpetrator violated the Hobbs Act. He argues, however, that the Government presented insufficient evidence to permit the jury to conclude beyond a reasonable doubt that he committed the robbery. Specifically, Harris contends that (1) the eyewitness identifications were unreliable; (2) the evidence of a BB gun recovered from his girlfriend's residence did not clearly link him to the crime; and (3) blue latex gloves recovered from his girlfriend's residence, allegedly matching gloves worn by the robber, are so commonplace that they do not support the conviction.
>
> It is well settled that "the identification of a criminal actor by one person is itself evidence sufficient to go to the jury and support a guilty verdict." United States v. Holley, 502 F.2d 273, 274 (4th Cir. 1974). Here, two eyewitnesses selected Harris from a photographic lineup and positively identified Harris during their in-court testimony. Although not contesting the admissibility of testimony regarding the identifications, Harris contends that the circumstances surrounding the photographic lineup identifications were so suggestive that the eyewitness identifications were insufficient to establish his identity as the robber. "In the absence of a very substantial likelihood of irreparable misidentification, [eyewitness identification] evidence is for the jury to weigh." Fowler v. Joyner, 753 F.3d 446, 454 (4th Cir. 2014) (internal quotation marks and ellipsis omitted). In determining the likelihood of misidentification, the factors a court should consider include:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972).

Here, both eyewitnesses had ample opportunity to view the robber. Although the robber wore a mask during the robbery, one of the eyewitnesses observed the robber before he pulled the mask over his face and the other eyewitness observed distinguishing facial features through cutouts in the mask. Further, both eyewitnesses provided an accurate description of the robber, in line with the descriptions provided by other eyewitnesses and generally matching a description of Harris. Additionally, both eyewitnesses testified that they were certain Harris was the robber. The testimony of Harris's alleged coconspirator placed Harris at the scene of the robbery. Finally, although Harris's federal trial occurred two years after the robbery, both eyewitnesses picked Harris out of a lineup within two days of the robbery and confronted Harris in state court proceedings within months of the robbery. Thus, under the Biggers factors, the eyewitness identification did not produce a "very substantial likelihood of irreparable misidentification."

Any weakness in the eyewitness identifications were ones for the jury to weigh when determining whether Harris was the robber. The contentions Harris advances regarding the BB gun and the latex gloves do not undermine the overall sufficiency of the Government's evidence. See United States v. Bynum, 604 F.3d 161, 166 (4th Cir. 2010) (observing where some evidence provided jury with sufficient basis to conclude defendant was perpetrator, alleged weaknesses in other evidence tying defendant to offense cannot sustain insufficiency of evidence claim). Thus, the district court did not err in denying Harris's Rule 29 motion.

United States v. Harris, 593 F. App'x 189, 190-91 (4th Cir. 2014) (alteration in original).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

## A.    Trial Counsel

### 1.    Claim One (a)

In Claim One (a), Harris raises three main allegations of ineffective assistance of counsel.  Harris first alleges that "[c]ounsel was ineffective for failing to file any pretrial motions[]" and for "fail[ing] to file any pretrial discovery." (§ 2255 Mot. 4, 13.)  Harris's claim respecting counsel's failure to file pretrial motions is belied by the record. Before trial, counsel filed a Motion in Limine, seeking to exclude testimony about Harris's alleged involvement in other robberies and to exclude evidence of a toy gun found in Harris's apartment.  Counsel also filed an Ex Parte Motion for Issuance of Subpoena Duces Tecum, requesting items that would "reflect communications between Mr. Harris and at least one of the government's main witnesses and w[ould] have a direct bearing on the credibility of the witness" (ECF No. 13), and an Ex Parte Motion for Issuance of Subpoenas, requiring specific witnesses to appear at trial (ECF No. 14).  Thus, contrary to Harris's allegation, counsel filed pretrial motions.

Harris's vague allegation fails to demonstrate a viable basis for relief, because he has alleged no facts that would support the claim that counsel failed to file pretrial discovery and because the Motion for Issuance of Subpoena Duces Tecum is a request for discovery.  Moreover, Harris has not identified what

"pretrial discovery" would have yielded. See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990). Considering the conclusory nature of Claim One, the Court cannot find that counsel's performance with respect to pretrial discovery was deficient. Nor has any prejudice been sufficiently established on that aspect of Harris's claim.

Harris next contends that counsel "fail[ed] to conduct any pretrial investigations." (§ 2255 Mot. 4.) Here too, Harris fails to establish that he is entitled to relief. To prevail on his claim that counsel failed to conduct a pretrial investigation, Harris must identify what an adequate investigation would have revealed. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." (citing Bassette, 915 F.2d at 940-41)). Here, Harris has pointed to no facts that would support his claim that counsel failed to conduct any pretrial investigation. Nor has Harris pleaded by proffer what such an investigation would have revealed. See Sanders, 373 U.S. at 19; Bassette, 915 F.2d at 940-41 (requiring proffer of mitigating evidence to state a

claim of ineffective assistance of counsel). Therefore, Harris has failed to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch, 273 F.3d at 588 (quoting Strickland, 466 U.S. at 689). Nor has Harris satisfied the prejudice requirement of Strickland.

Finally, Harris contends that trial counsel was ineffective because "counsel was not properly prepared with relevant facts and appropriate legal standards to support her arguments[,] [and] [] nor were counsel's strategic decisions regarding the challenging of evidence acceptable." (§ 2255 Mot. 13-14.) Harris cites four instances of what he perceives to be ineffective assistance of counsel attributable to counsel's inadequate preparation and unacceptable strategic decisions. They are that:

> (a) counsel withdrew evidence of a misidentification of the Defendant;

> (b) counsel failed to obtain and submit to the jury evidence of the misidentification;

> (c) counsel failed to properly set a foundation for argument and failed to properly impeach witnesses during his cross-examination; and

> (d) counsel failed to object to prejudicial statements made by the prosecutor during trial.

Before addressing those four points, it is necessary to note that Harris fails at the threshold because he has not satisfied Rule 2(b) of the Rules Governing Section 2255 Proceedings. Rule 2(b) requires that a petitioner must "state the facts supporting each ground" for relief. Here, Harris fails to set forth any supporting facts for his claims regarding counsel's inadequate preparation and unacceptable strategic decisions. Instead, he apparently and expects the Court to locate what he thinks are deficiencies. The Court cannot do that. For that reason alone, Harris's claims respecting counsel's alleged deficient performance fail to establish that he is entitled to relief. See Mayle v. Felix, 545 U.S. 644, 655 (2005); Blackledge v. Allison, 431 U.S. 63 n.7 (1977). Of course, we accord pro se litigants a measure of leniency. But, even extending that leniency, Harris's claims lack merit.

### (a) The Alleged Misidentification Evidence

Harris claims that counsel's performance was deficient due to a decision to withdraw evidence of "a prior misidentification" by a witness. (§ 2255 Mot. at 15.) Harris cites to pages 95 to 135 of the parties' Joint Appendix as support for this claim. (Id. (citing J.A. 95-152).) The pages identified by Harris are from the transcript of the trial in this Court. (See J.A. 95-152, Gov't's Resp. Ex. 2, ECF No. 88-2; see also Jan. 6, 2014    Tr. 170-227, ECF No. 64.) Upon

review of the pages identified by Harris, Harris's vague contention regarding "a previous misidentification of the Defendant" appears to refer to the misidentification of Harris during a state court proceeding in which one of the witnesses was shown a photo lineup that did not contain Harris's photograph.

During Harris's trial in this Court, Harris's counsel initially raised this issue on cross-examination of the witness, Ms. Hurley. (Jan. 6, 2014 Tr. 170.) The prosecution objected to this line of questioning, and the jury was removed. (Jan. 6, 2014 Tr. 170-71.) After a lengthy discussion and the presentation of arguments out of the presence of the jury, in which Harris's counsel argued that the "misidentification" should be presented to the jury, Harris's counsel moved to withdraw her questions regarding the asserted misidentification. (Jan. 6, 2014 Tr. 171-227.) Counsel stated: "I do not believe it would be appropriate to bring in external witnesses on this external side issue. In addition to that, Your Honor, I don't know that giving the jury the transcript does it either, so at this point, I would just move to withdraw the lineup questioning." (Jan. 6, 2014 Tr. 227.) Although Harris claims that counsel's decision to withdraw the questions about the alleged prior misidentification in state court "was clear deficient performance by counsel," Harris provides no

explanation about why he believes that doing so was deficient or why he was prejudiced by counsel's decision to withdraw the questions. Thus, because Harris fails to allege any facts that would support his claim, Harris fails to demonstrate that counsel's performance at trial was deficient or that he suffered any prejudice. Moreover, Harris also fails to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch, 273 F.3d at 588 (quoting Strickland, 466 U.S. at 689).

### (b) The Alleges Failure To Obtain Evidence

Harris next argues that counsel was ineffective because counsel failed to obtain or submit evidence to the jury about "[p]rior testimony by one of the prosecution's two key witnesses[,] [which] reveals that there was a third identification process conducted that identified someone else as the suspect of the crime." (§ 2255 Mot. 14 (citing J.A. 229-35).) Harris argues that "this evidence was never obtained and submitted into evidence by counsel for the jury to review because of discovery issues." (Id.) Harris fails to allege any additional facts and fails to provide any supporting argument about why he believes that counsel's performance was deficient. Instead, he cites pages 229 to 235 in the Joint Appendix. (Id. (citing J.A. 229-35).) The pages identified by Harris are from

the transcript of the trial in this Court. (See J.A. 229-35; see also Jan. 7, 2014 Tr. 303-09, ECF No. 65.)

Upon review of the cited pages, it appears that Harris's claim is in referring to the following testimony from a witness at trial, who is identified as "K.D." (because the witness was a juvenile):

> I was asked to, you know, to tell what happened, and then after that, he showed me what you call a lineup . . . . He told me to pick, and I did pick, and then he asked me to pick again . . . .

(Jan. 7, 2014 Tr. 303.) Later K.D. testified that she was not able to identify anyone as the robber, and that, before looking at the lineup, she had told the detective that she had not been able to see the robber's face. (Jan. 7, 2014 Tr. 309.) To the extent that Harris argues that this testimony shows that another individual was identified as a potential suspect, the argument is belied by the testimony given at trial because the witness testified that she had not seen the robber's face and had been unable to identify anyone as the robber. Further, with respect to Harris's vague statement that "discovery issues" prevented counsel from obtaining such evidence, Harris has not specified what evidence he believes counsel should have obtained. On this record, Harris has not demonstrated that counsel's performance was deficient or that he suffered any prejudice.

### (c) The Foundation Point

Harris contends that counsel was ineffective because "[t]he Court had to repeatedly instruct defense counsel on how to set foundation for argument and how to properly impeach witnesses on cross-examination." (§ 2255 Mot. 14 (citing J.A. 195-98, 485-[5]24).) The only point that contention proves is that counsel was given help on how to lay a foundation. Harris has supplied no facts that show whether evidence was admitted or excluded on foundational grounds. Instead he has cited to several pages in the Joint Appendix that do not support his conclusory argument. Moreover, Harris has not demonstrated a reasonable probability that, but for counsel's alleged performance deficiencies, the jury's verdict would have been different. See Strickland, 466 U.S. at 694. Thus, Harris demonstrates neither deficiency nor any resulting prejudice.

### (d) Failure To Object To Prejudicial Statements By The Prosecutor

Harris claims that:

> Counsel failed to challenge and object to certain prejudicial statements by the prosecutor that supported no evidence, like the prosecutor vouching for the credibility of one of the prosecution's two key witnesses by falsely stating to the jury and the Court that the witness was intentionally given an altered lineup at a previous hearing[,] [] and that once she realized that she had made a misidentification of the Defendant from that lineup she brought that to their attention.

(§ 2255 Mot. 14 (citing J.A. 82-152).) Harris cites to pages 82 to 152 of the Joint Appendix (the trial transcript) as support for his allegation. (See J.A. 82-152; see also Jan. 6, 2014 Tr. 157-227.) Harris previously referred to these pages as support for his claim that counsel's performance was deficient because counsel withdrew questions about the so-called prior misidentification by one of the prosecution's witnesses. (See Jan. 6, 2014 Tr. 170-227.) As previously discussed, the Court heard arguments out of the presence of the jury about the circumstances surrounding the prior misidentification. (Jan. 6, 2014 Tr. 171-227.) Contrary to Harris's conclusory assertion that counsel failed to challenge the prosecution's arguments, counsel did in fact challenge the prosecution's characterization of the witness's misidentification. (Jan. 6, 2014 Tr. 171-227.) Harris has provided no evidence that there were any other instances in which his counsel failed to object to, or challenge, allegedly prejudicial statements by the prosecutor. See Sanders, 373 U.S. at 19.

Accordingly, for the reasons set forth above, Harris has not demonstrated deficient performance of trial counsel or any resulting prejudice. Claim One (a), therefore, will be dismissed.

## 2. Claim One (b)

In Claim One (b), Harris contends that "[c]ounsel refused to file a pretrial motion to dismiss federal indictment on the grounds that the government violated Defendant's Fifth Amendment Due Process Rights against pre-indictment delay." (§ 2255 Mot. 4.) To succeed on a claim of pre-indictment delay, "the defendant must show that he has suffered 'actual prejudice' from the pre-indictment delay." United States v. McKoy, 129 F. App'x 815, 819 (4th Cir. 2005). "Prejudice is demonstrated when the defendant has been 'meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.'" Id. (citing Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996)). "[I]f actual prejudice is shown, the court then must balance the demonstrated prejudice against the government's purported need for the delay." Id. (citing Howell v. Barker, 904 F.2d 889, 895 (4th Cir. 1990)).

In this case, the grand jury charged Harris in a one-count Indictment on July 9, 2013, which was within fifteen months of the offense and within the five-year statute of limitations period. (Indictment 1-2, ECF No. 1; 18 U.S.C. § 3282.) Harris contends that the alleged delay prejudiced him in three ways. (§ 2255 Mot. 14.) Harris first argues that "[the] Government's failure to try Defendant on the state[] level first

19

caused pre-indictment delay . . . that was very detrimental and prejudicial to the Government's second prosecution of Defendant on the federal level for the same offense or criminal conduct." (Id.) Harris next argues that "[t]he Sixth Amendment Speedy Trial dismissal in the first attempted prosecution by the [state] government is proof that actual prejudice resulted from a pre-indictment delay." (Id. at 15.) Finally, Harris argues that the "[d]elay caused by the Government on the state[] level was purposefully designed to gain tactical advantage and harass the Defendant when the government intentionally used tactics to keep the Defendant incarcerated on the same offense." (Id.) Harris has provided no factual support for any of these conclusory arguments. See McKoy, 129 F. App'x at 819. It is settled that conclusory assertions, without any factual support, fail to establish that counsel was deficient for failing to file a pretrial motion to dismiss the indictment. Harris's conclusory allegations of prejudice, do not satisfy the prejudice facet of Strickland. Accordingly, Claim One (b) will be dismissed.

### 3. Claim One (c)

In Claim One (c), Harris contends that counsel refused "to file [a] pretrial suppression motion to suppress the in-court [and] out-[of-]court identification of the prosecutor's two key witnesses." (§ 2255 Mot. 15.) As support for this assertion,

Harris claims that the "procedures conducted by the state[']s lead detective to obtain both witnesses['] identification of the Defendant as the suspect []was conducted by using suggestive identification procedures . . . [which] violates Defendant's Fifth Amendment Due Process Rights against suggestive identification procedures." (Id.) Harris also claims that his "constitutional right to an effective review on appeal as guaranteed by the 6th and 14th Amendments to the U.S. Constitution" somehow was violated. (Id.)

On direct appeal, Harris argued that this Court had erred by denying his Rule 29 motion, arguing, inter alia, that "the circumstances surrounding the photographic lineup identifications were so suggestive that the eyewitness identifications were insufficient to establish his identity as the robber." United States v. Harris, 593 F. App'x 189, 190 (4th Cir. 2014). The Fourth Circuit rejected this claim on direct appeal. Id.; see supra Part II. Harris has not explained how a motion to suppress would have had a reasonable probability of success, considering that virtually the same argument about the suggestiveness of the photographic lineups was rejected by the Fourth Circuit on direct appeal. Nor has Harris shown that, but for counsel's failure to file the motion to suppress, the jury's verdict would have been different. See Strickland, 466 U.S. at 694. Thus, Harris fails to demonstrate

that not filing a motion to suppress was deficient performance or that he suffered any prejudice. Accordingly, Claim One (c) will be dismissed.

### 4. Claim One (d)

In Claim One (d), Harris contends that counsel refused "to file [a] pretrial motion to dismiss [the] federal indictment on grounds that prior dismissal of all [state] charges against Defendant for the April 28, 2012 offense . . . should have constitutionally barred the federal government from later bringing charges against the Defendant for the same April 28, 2012 offense." (§ 2255 Mot. 16.) Harris's double jeopardy challenge lacks merit. "While the Double Jeopardy Clause of the Fifth Amendment generally protects against successive prosecutions for the same offense, the 'dual or separate sovereigns' doctrine normally eliminates the Double Jeopardy bar to a federal prosecution after a state prosecution." United States v. Beckford, Nos. 97-4924, 97-4925, 97-4926, 97-4927, 2000 WL 376155, at *10 (4th Cir. May 3, 2000) (citing Heath v. Alabama, 474 U.S. 82, 89 (1985)). Contrary to Harris's assertion, the previous state prosecution for the same offense did not bar the subsequent federal prosecution of the offense. Additionally, as discussed below, the "sham prosecution" exception to the dual sovereigns doctrine does not apply in this case. See infra Part V.C. Therefore, counsel reasonably did

22

not raise a meritless double jeopardy challenge because the dismissal of Harris's state charges did not bar his federal indictment. Accordingly, Claim One (d) will be dismissed.

## B.  Appellate Counsel

In Claim Four, Harris argues that "[a]ppellate counsel was ineffective for failing to present on appeal evidence to support [the contention] that the subsequent federal indictment against him should have been constitutionally barred from re-prosecution due to the prior dismissal of all [state] charges on Sixth Amendment speedy trial grounds." (§ 2255 Mot. 19.)  This is the same contention that was at issue in Claim One (d).  A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).  As explained above, dismissal of the charges in state court clearly did not bar Harris's federal indictment.  Therefore, Harris's appellate counsel reasonably eschewed raising this issue on appeal.  Accordingly, Harris's Claim Four will be dismissed.

# V. SUFFICIENCY OF THE EVIDENCE

In Claim Three, Harris contends that "[t]he evidence adduced in the trial of this case was insufficient as a matter of fact and law to sustain the resulting conviction." (§ 2255 Mot. 7.) Harris claims that "[b]oth witnesses did not have ample opportunity to view the suspect," and that "the level of certainty by both witnesses for the prosecution should be questioned due to the inconsistencies in prior hearings." (§ 2255 Mot. 18-19.) This argument is a challenge to the sufficiency of the evidence.

On direct appeal, Harris asserted that this Court had erred by denying his Rule 29 motion, arguing that the eyewitness identifications were unreliable and that "the Government presented insufficient evidence to permit the jury to conclude beyond a reasonable doubt that he committed the robbery." United States v. Harris, 593 F. App'x 189, 190 (4th Cir. 2014). Because the Fourth Circuit rejected Claim Three on direct review, and Harris fails to direct the Court to an intervening change in the law that would warrant its reconsideration, Claim Three is barred from review here. See United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009) (citations omitted);

<u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).[8] Accordingly, Claim Three will be dismissed.

## VI.  PROSECUTORIAL MISCONDUCT

In Claim Two (a) and (b) and Claim Five, Harris presents allegations of prosecutorial misconduct.  The Court notes that, although Harris states that Claim Five presents allegations of judicial misconduct, Harris's allegations relate to the actions of the prosecution, rather than the Court.  (§ 2255 Mot. 9, 20-21.)  Therefore, the Court construes Harris's Claim Five as presenting allegations of prosecutorial misconduct.  Claim Two (a) and (b) will be assessed first.  Then Claim Five will be assessed.

### A.  Claim Two (a)

In Claim Two (a), Harris first contends he "was denied a fair trial" because of the alleged "prosecutorial misconduct[:] . . . Fifth Amendment Double Jeopardy violation (vindictive prosecution) (selective prosecution)."  (§ 2255  Mot. 16.) Specifically, Harris states that "[t]he prosecutor acted vindictively when he decided to prosecute [Harris] in federal court after [Harris] successfully exercised his Sixth Amendment

---

[8] Moreover, as summarized in the Fourth Circuit's opinion, ample evidence presented at trial established Harris's guilt. <u>See</u> <u>Harris</u>, 593 F. App'x at 190-91.

speedy trial right in a prior prosecution based on the same offense or criminal conduct." (Id.)

"To establish prosecutorial vindictiveness, a defendant must show, through objective evidence[] that[:] (1) the prosecutor acted with genuine animus toward the defendant[;] and (2) the defendant would not have been prosecuted but for that animus." United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001) (citations omitted). The prosecutor's improper motive may be established by direct evidence or "may be presumed. . . . [when] a defendant . . . show[s] that the circumstances 'pose a realistic likelihood of vindictiveness.'" Id. (quoting Blackledge v. Perry, 417 U.S. 21, 27 (1974)). As discussed above, Harris's federal prosecution was permitted under the dual sovereigns doctrine which allows federal prosecution after a state prosecution for the same offense. United States v. Beckford, Nos. 97-4924, 97-4925, 97-4926, 97-4927, 2000 WL 376155, at *10 (4th Cir. May 3, 2000) (citing Heath v. Alabama, 474 U.S. 82, 89 (1985)). Therefore, contrary to Harris's claim, the Government's prosecution was not in violation of the Fifth Amendment's Double Jeopardy Clause. Furthermore, Harris's claim of vindictive prosecution fails because it is premised on the incorrect assumption that the initial state prosecution barred his subsequent federal prosecution.

In Claim Two (a), Harris also argues that the Government engaged in selective prosecution. (§ 2255 Mot. 16.) "A selective prosecution claim is an 'assertion that the prosecutor had brought the charge for reasons forbidden by the Constitution.'" United States v. Venable, 666 F.3d 893, 900 (4th Cir. 2012) (quoting United States v. Armstrong, 517 U.S. 456, 463 (1996)). "'In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary,' demonstrating that the government was motivated by a discriminatory purpose to adopt a prosecutorial policy with a discriminatory effect." Id. (quoting Armstrong, 517 U.S. at 465). Here, Harris listed "selective prosecution" as part of his claim (§ 2255 Mot. 5, 16). However, he provided no support for the conclusory assertion. Harris's conclusory assertion without factual support fails to establish a basis for relief. See Sanders v. United States, 373 U.S. 1, 19 (1963). Accordingly, and for the reasons set forth above, Claim Two (a) will be dismissed.

**B. Claim Two (b)**

In Claim Two (b), Harris contends that the prosecution engaged in "[i]ntentional distortion of evidence/ Brady violation in that the prosecution withheld exculpatory evidence." (§ 2255 Mot. 5.) A viable claim of prosecutorial

misconduct requires a defendant to demonstrate "that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (citing United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993)). "To prevail on a Brady claim, the defendant must demonstrate (1) that the evidence is favorable, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence; and (3) that the evidence was material to the defense." United States v. Higgs, 663 F.3d 726, 735 (4th Cir. 2011) (citations omitted).

Here, Harris argues that "[t]he prosecutor distorted legal evidence . . . [and] made false statements that the six-pack photo array that was presented to the witness at a prior court hearing by the Defendant's attorney at that time was altered and presented to the witness through trickery." (§ 2255 Mot. 17.) As explained above, during a state court hearing, a witness identified Harris from a lineup that did not contain his photograph. (See May 20, 2013 Tr. 18-19, 45, Gov't's Resp. Ex. 8, ECF No. 88-8.) During Harris's federal trial, the Court heard arguments from counsel regarding the witness's prior misidentification. (Jan. 6, 2014 Tr. 171-227, ECF No. 64.)

After hearing counsel's arguments about the prior misidentification, the Court stated:

> You say mistake. She says trickery. Either way, [the witness] was given something . . . . She heard [counsel] say it was a copy of the actual lineup, and what she was given was apparently a pretty dark copy. . . . [T]hen she's asked questions in the context of who has mustaches and big eyes, and she answers that, and then this other thing comes out and nobody cleans it up.

(Jan. 6, 2014 Tr. 226.) Ultimately, Harris's counsel in the federal case withdrew her questions about the witness's misidentification at the state court hearing. (Jan. 6, 2014 Tr. 227.) Although Harris may disagree with the prosecutor's arguments and characterization of the witness's misidentification, the record disproves Harris's claim that the prosecutor made false statements or withheld, or distorted, allegedly exculpatory evidence. Indeed, Harris has provided no factual support for his conclusory claim that the prosecutor made "false prejudicial statements," and such conclusory assertions without any factual support fail to establish a basis for relief. See Sanders, 373 U.S. at 19.

Harris also argues that the "[p]rosecutor withheld legal evidence of a legally signed document by two witnesses in the case who identified someone else from the photo array that was not the Defendant." (§ 2255 Mot. 22.) Contrary to Harris's claim, the second photo lineup was provided to the defense

during discovery, and it was actually discussed at trial. (See Jan. 8, 2014 Tr. 537, ECF No. 66; Gov't's Resp. 21.) Further, although the second lineup was shown to two witnesses, Sheila Ross and a juvenile, "K.D.," no additional suspects were identified from the second lineup. (Jan. 8, 2014 Tr. 539-40) ("She looked at the lineup, and she was unable to identify anybody in the lineup. At that point, I took that lineup back and I handed her a second lineup . . . . [S]he was unable to make any identification from those lineups.") Thus, Harris's claim that the prosecutor withheld exculpatory evidence of a second lineup is also disproved by the record.

In summary, Harris has not demonstrated any prosecutorial misconduct and has not demonstrated that the prosecution withheld exculpatory evidence. Accordingly, Claim Two (b) will be dismissed.

## C. Claim Five

In Claim Five, Harris argues that "[t]he trial of this case is representative of a sham prosecution." (§ 2255 Mot. 20.) Specifically, Harris says that "[t]here was no other reason for the federal government to seek a single charge on an offense that's already federally protected from re-prosecution unless the federal government sought to aid the state by bypassing the provisions of the U.S. Constitution[]." (Id.) As set forth above, contrary to Harris's claim, federal prosecution after

state prosecution for the same offense is permitted under the dual sovereigns doctrine, and the subsequent federal prosecution is not subject to the double jeopardy bar. Beckford, 2000 WL 376155, at *10 (citing Heath, 474 U.S. at 89).

Furthermore, to the extent that Harris intends to argue that the "sham prosecution" exception to the dual sovereigns doctrine applied to this action, that argument lacks merit. The "sham prosecution" exception "may only be established by proof that State [or federal] officials had little or no independent volition in their proceedings." Id. (citations omitted). Here, Harris asserts that his federal prosecution was a "sham prosecution" because, inter alia, "[t]he prosecutor even went so far as to appoint the lead detective for the state as the prosecutor's assistant at table before jury selection and prosecutor's witness against Defendant at the end of trial." (§ 2255 Mot. 20.) "Cooperation between sovereigns does not establish that one sovereign has ceded its prosecutorial discretion to the other sovereign." United States v. X.D., 442 F. App'x 832, 833 (4th Cir. 2011) (citation omitted). Here, Harris has not shown that one sovereign controlled the other sovereign's decision-making, and he points to nothing in the record that even tends to show that either sovereign did not act of its own volition. Accordingly, Claim Five will be dismissed.

## VII. CONCLUSION

For the foregoing reasons, Harris's claims will be dismissed. Harris's § 2255 Motion (ECF No. 77) will be denied and the action will be dismissed. A certificate of appealability ("COA") will be denied.[9]

The Clerk is directed to send a copy of this Memorandum Opinion to Harris and counsel of record.

It is so ORDERED.

_____ /s/    RES
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July **17**, 2018

---

[9] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Harris fails to satisfy this requirement.